UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| **ADAMAE RAPER,** | ) |
| **Plaintiff,** | ) ) ) |
| v. | ) ) **Case No.: 5:23-cv-1706-LCB** |
| **FRANK BISIGNANO,**[1] *Commissioner, Social Security Administration,* | ) ) ) ) ) |
| **Defendant.** | ) |

## **MEMORANDUM OPINION**

On December 18, 2023, Claimant Adamae Raper filed a complaint seeking judicial review of an adverse decision of the Commissioner of the Social Security Administration ("the Commissioner") pursuant to 42 U.S.C. § 405(g). (Doc. 1). The Commissioner filed an answer and a copy of the administrative record on February 20, 2024. (Doc. 7). Raper filed a brief in support of her position on March 21, 2024, and the Commissioner filed a response on April 22, 2024. (Docs. 9, 10). Raper did not file a reply brief. Accordingly, the issues are now fully briefed, and Raper's case is ripe for review. For the reasons below, the Commissioner's final decision is due to be affirmed.

---

[1] Originally Raper sued Kilolo Kijakazi, the then-Acting Commissioner of Social Security. However, pursuant to Federal Rule of Civil Procedure 25(d), Frank Bisignano has been substituted as the Defendant.

## I.     BACKGROUND

On April 10, 2021, Raper filed an application for a period of disability and disability insurance benefits, alleging disability beginning on April 8, 2021. (Tr. 160, 287–88; *see* Tr. 22). These claims were denied initially on October 14, 2021, and denied again upon reconsideration on January 12, 2023. (Tr. 160–72, 174–90). Thereafter, Raper requested a hearing before an Administrative Law Judge, Judge Patrick Digby ("the ALJ"), who held a hearing on May 31, 2023, where an impartial vocational expert testified. (Tr. 48–93). The ALJ subsequently issued an unfavorable decision on September 6, 2023. (Tr. 19–47). Though Raper sought review by the Appeals Council, this request was denied, and the ALJ's decision became the Commissioner's final decision. (Tr. 1–6). This lawsuit followed.

## II.     THE ALJ'S DECISION

After the hearing, the ALJ issued a written opinion explaining his decision. (Tr. at 22–41). In issuing his decision, the ALJ followed the five-step evaluation process set out by the Social Security Administration. *See* 20 CFR 416.920(a). The steps are followed in order and, if it is determined that the claimant is or is not disabled at a particular step of the evaluation process, the ALJ will not proceed to the next step.

The first step requires the ALJ to determine whether the claimant is engaging in substantial gainful activity, which is defined as work involving significant

physical or mental activities usually done for pay or profit. If a claimant is engaged in substantial gainful activity, she is not disabled, and the inquiry stops. Otherwise, the ALJ will proceed to step two. In the present case, the ALJ found that Raper did not engage in substantial gainful activity during the relevant time period. (Tr. at 13–14). Accordingly, the ALJ moved on to the second step of the evaluation.

At step two, an ALJ is to determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe." 20 C.F.R. 416.920(c). An impairment is severe if it "significantly limits [a claimant's] physical or mental ability to do basic work activities . . . ." *Id*. If a claimant does not have a severe impairment, she is not disabled, and the inquiry ends. If she does have a severe impairment, the ALJ will proceed to the third step. In the present case, the ALJ found that Raper had the following severe impairments: "cervical and lumbar degenerative disk disease, osteoarthritis of the right knee status post knee arthroscopy with debridement (2020), bronchitis (acute), obesity, migraine headaches, anxiety, and depression." (Tr. at 24 (citing 20 CFR 404.1520(c))).

At the third step, an ALJ determines whether the claimant's impairments or combination thereof are of a severity to meet or medically equal the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix I. If the claimant's impairment or impairments meet or equal a listed impairment, then the claimant is disabled, and the evaluation ends. Otherwise, the ALJ proceeds to the next step. In

this case, the ALJ found that Raper's impairments did not meet or equal any of the listed criteria. (Tr. at 25). Specifically, the ALJ reviewed listings for musculoskeletal disorders, neurological disorders, and mental disorders as well as Raper's unlisted obesity. (*Id.* (citing to listings 1.00, 11.02, and 12.00). Therefore, the ALJ proceeded to step four.

Step four of the evaluation requires an ALJ to first determine the claimant's residual functional capacity ("RFC"), and whether she has the RFC to perform the requirements of any past relevant work. 20 C.F.R. 416.920(f). The term "past relevant work" means work performed within the last 15 years prior to the alleged date of onset. If a claimant has the RFC to perform past relevant work, she is not disabled, and the evaluation stops. Otherwise, the evaluation proceeds to the final step. In Raper's case, the ALJ found that she had the RFC to perform a light work as defined in 20 CFR 404.1567(b) with specific limitations:

> The claimant could occasionally lift and/or carry, including upward pulling of twenty pounds, and could frequently lift and or carry including upward pulling of ten pounds. The claimant could sit for six hours in an eight hour workday with normal breaks, and stand and/or walk with normal breaks for six hours in an eight-hour workday. For safety precaution, the claimant could not work on ladders, ropes, or scaffolds; at unprotected heights; or around dangerous machinery. The claimant could occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl. No work on uneven terrain. No work where vibrations are involved, including using vibration tools such as power tools and air compression tools. No frequent exposure to fumes, odors, dusts, gases, and poor ventilation. No frequent exposure to extreme cold, heat, wetness, and humidity, so no work outside, by open flames, or inside enclosed coolers. She could occasionally reach overhead and

4

>frequently laterally reach. She could tolerate noise at, but not above, a level three, office. She could understand, remember, and carry out short and simple instructions. No frequent changes in the work environment. She could have occasional contact with the general public, coworkers, and supervisors. She could concentrate and remain on task for two-hour periods across an eight-hour work day on the short, simple tasks without interruptions from psychological based symptoms.

(Tr. 27–28).

Once the claimant's RFC is established, the ALJ compares the claimant's RFC to the demands of their former relevant work (Step 4) and any other work in the national economy (Step 5). If a claimant can perform former relevant work, or the Agency can show that the claimant is able to perform any other work in the national economy, then the claimant is not disabled. 20 C.F.R. §§ 404.1512(f), (g). Here, given her RFC, the ALJ determined that Raper was unable to perform her past relevant work. (Tr. at 39–40). However, based on the testimony of a vocational expert, the ALJ found that, through the date last insured, Raper could have adjusted to other work existing in significant numbers in the national economy and was therefore not disabled within the meaning of the Social Security Act. (Tr. 40–41).

### III.   Standard of Review

This Court must determine whether the Commissioner's decision is supported by substantial evidence and whether the correct legal standards were applied. *Winschel v. Comm'r of Social Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). "Substantial evidence is more than a scintilla and is such relevant evidence as a

reasonable person would accept as adequate to support a conclusion." *Id*. (internal citation and quotation marks omitted). "This limited review precludes deciding the facts anew, making credibility determinations, or re-weighing the evidence." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). Thus, while the Court must scrutinize the record as a whole, the Court also must affirm if the decision is supported by substantial evidence, even if the evidence preponderates against the Commissioner's findings. *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264 (11th Cir. 2015); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

> Additionally, in order
>
> [t]o establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test by showing (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.

*Zuba-Ingram v. Commissioner of Social Security*, 600 Fed. Appx. 650, 656 (11th Cir. 2015) (quoting *Booth v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002)).  If the claimant establishes that he has an impairment which could reasonably be expected to produce his alleged symptoms, then the intensity and persistence of his alleged symptoms and their effect on his ability to work must be evaluated. 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1). The Eleventh Circuit has recognized that the Commissioner's regulation at 20 C.F.R. § 404.1529 is consistent with the Eleventh

6

Circuit's pain standard, and the ALJ need not quote the pain standard verbatim as long as the ALJ applies it. *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002).

When evaluating a claimant's statements regarding the intensity, persistence or limiting effects his symptoms, ALJs consider all the evidence, objective and subjective. 20 C.F.R. §§ 404.1529, 416.929. ALJs may consider the nature of the claimant's symptoms, the effectiveness of medication, a claimant's treatment, a claimant's daily activities, measures a claimant takes to relieve symptoms, and any conflicts between the claimant's statements and other evidence. 20 C.F.R. §§ 404.1529(c)(3)–(4), 416.929(c)(3)–(4). A court "will not disturb a clearly articulated" finding about subjective complaints supported by substantial evidence. *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014).

## IV. Raper's Arguments

Raper presents a single issue for the Court's review: "Whether the ALJ failed to properly evaluate the credibility of the Plaintiff's complaints consistent with the Eleventh Circuit Pain Standard." (Doc. 9 at 6). Within this broader issue, Raper presents several supporting bases for the remand of her case. Raper specifically challenges the ALJ's assessment of certain evidence, stating that substantial evidence does not support the ALJ's findings as he failed to properly assess her subjective complaints in his determination of her RFC and that he "erroneously concluded the Plaintiff's daily activities were not as limited as alleged." (*Id.* at 13).

### A.   The ALJ properly evaluated Raper's medical records.

The ALJ acknowledged that Raper's medically determinable impairments could reasonably be expected to produce the alleged symptoms. (Tr. 31). However, he found Raper's statements regarding the intensity, persistence, and limiting effects of the symptoms were inconsistent with the medical and other evidence in the record. (*Id.*).

Raper first argues that "the ALJ failed to properly consider the Plaintiff's entire medical record when making his determination." (Doc. 9 at 9). In support of this proposition, Raper points to the record itself, stating that "[t]he treatment records, physical examinations and objective testing would not allow a reasonable person to conclude [Raper] can perform a range of light work on a sustained basis." (*Id.*). Raper points to medical records from March 2021 indicating her complaints regarding radiating pain from her lower back as well as "numbness and tingling if she sat too long." (*Id.* (citing Tr. 621)). In addition, Raper cites other evidence of her pain which, she says, shows the "consistent intensity of [her] reports of pain" such as several MRIs she had received, that "[t]he physical examination of the Plaintiff's cervical and lumbar spine showed moderate paraspinal muscle tenderness," and how her pain continued to worsen after a fall in April 2021. (*Id.* at 9–10 (citing Tr. 502, 623–25, 640, & 682)). Dr. Lloyd Dyas, Raper's treating physician, stated that Raper "had completed physical therapy without lasting benefit, she had been under

chiropractic care including TENS unit without lasting benefit and he recommended she seek social security disability." (*Id.* at 10 (citing Tr. 655 (emphasis removed))).

However, the ALJ properly assessed the objective evidence in the record, but came to a different conclusion regardingwhat the records showed. "[T]here is [simply] no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection which is not enough to enable [a reviewing court] to conclude that the ALJ considered [the claimant's] medical condition as a whole." *Mitchell,* 771 F.3d at 782 (quoting *Dyer v. Barnhart,* 395 F.3d 1206, 1210 (11th Cir. 2005)) (internal quotation marks omitted). Though Raper is correct that an ALJ may not simply "pick and choose among a doctor's records to support his own conclusion," *Chambers v. Astrue*, 671 F. Supp. 2d 1253, 1258 (N.D. Ala. 2009), the ALJ analyzed the medical records providing substantial evidence in support of his determination and demonstrating the disparity between the records and Raper's subjective complaints. (*See Truesdell v. Comm'r of Soc. Sec.*, No. 20-13416, 2022 WL 401548, at *6 (11th Cir. Feb. 10, 2022) (holding that the ALJ identified inconsistencies with Plaintiff's allegations and the evidence by considering Plaintiff's medical condition and supporting her assessment with citations to the Plaintiff's medical records and treatment history, amongst other factors)).

9

Here, the ALJ fully considered Raper's testimony and the objective medical records regarding all of her ailments including her cervical and lumbar spine conditions and her right knee osteoarthritis, whether she had diagnosed impairments secondary to or dependent on obesity or any functional limitations from obesity, her reported migraines, and the state of her alleged depression and anxiety. For example, the ALJ cited to diagnostic imaging which was generally inconsistent with Raper's alleged pain. (Tr. 30). When considering Raper's degenerative cervical and lumbar spine disease, the ALJ notes that she "was under management by orthopedics during 2021 with conservative treatment. The records note she was not a surgical candidate and there are no records of any recurring ER care or inpatient hospitalization for symptom control." (*Id.*).

Even after her fall in April 2021, "[t]he record shows that on May 24, 2021, Dr. Dyas gave the claimant a certificate to return to work with no restrictions as of June 22, 2021" and that she reported to her physical therapist that she was "feeling improved overall." (*Id.*). On June 22, 2021, she ultimately expressed her dissatisfaction with the results of her physical therapy. (*See* Tr. 655). However, at that same visit, Dr. Dyas found that "[t]here was no limit on cervical ranges of motion and no instability, only mild decrease of lumbosacral motions with normal gait, the hips both had full and painless ranges of motion throughout, and no motor,

sensory, or reflex deficit" and that Raper specifically reported that "her medications are beneficial." (Tr. 30–31).

Raper also argues that "[t]he ALJ's reliance upon certain 'normal findings' is not a sufficient basis on which to discredit [Raper's] testimony regarding her pain." (Doc. 9 at 12 (citing 20 C.F.R. 404.1529(c)(2), 416.929(c)(2); *Sasnette v. Colvin*, 2015 WL 4459381, at \*10–11 (N.D. Ala. July 21, 2015)). However, the Eleventh Circuit recognizes that a claimant's lack of treatment or conservative treatment supports an ALJ's determination to discount a claimant's allegations of disabling symptoms and limitations. *See, e.g.*, *Morales v. Comm'r of Soc. Sec.*, 799 F. App'x 672, 676–77 (11th Cir. 2020); *Buley v. Comm'r of Soc. Sec.*, 739 F. App'x 563, 571 (11th Cir. 2018); *Horowitz v. Comm'r of Soc. Sec.*, 688 F. App'x 855, 863 (11th Cir. 2017); *Wolfe v. Chater*, 86 F.3d 1072, 1078 (11th Cir. 1996). Here, the ALJ did not rest his decision solely on the normal findings in Raper's record, but in conjunction with the conservative courses of treatment Raper was prescribed for her ailments and with consideration of Raper's testimony. (Tr. 27–39); *see Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003). Therefore, the Court finds that the ALJ properly evaluated Raper's medical records, treatment, and testimony.

**B. The ALJ properly considered Raper's testimony regarding the alleged limitations in her daily activities.**

Raper additionally argues that even though the ALJ considered the daily activities which she was able to perform, the ALJ failed to properly consider the

limitations that Raper herself had placed on her ability to perform those daily activities. These limitations included being unable to do much housework due to her pain and depression, needing help getting showered or dressed and using a shower chair, requiring the assistance of a walker in her home, doing dishes only once per week, and only attending church occasionally because she "sometimes wakes up and is hurting really bad and does not feel like going." (Doc. 10 at 13–14 (citing Tr. 94, 468–69)).

Citing to *Horton v. Barnhart*, 469 F. Supp. 2d 1041, 1047 (N.D. Ala. 2006), Raper argues that "the ALJ improperly dismissed the qualifying limitations the Plaintiff placed on many of those activities" and "[t]he ALJ's attempt to show inconsistencies between the Plaintiff's allegations of disabling symptoms and her statements regarding her daily activities is not supported by substantial evidence when the activities are not accurately described." (Doc. 9 at 15). She asserts that the activities referenced by the ALJ are not inconsistent with the presence of debilitating symptoms" as the Eleventh Circuit acknowledges that participation by a claimant in "'[everyday] activities of short duration' does not preclude [her] from proving disability." (*Id.* at 13 (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997) (alteration supplied))).

However, Raper's subjective complaints did not align with the record before the ALJ:

> . . . the evidence of record includes claimant's report of greater activities and functioning during the period at issue (alleged onset date of April 8, 2021 through date last insured of December 31, 2021). For example, in July 2021, the claimant reports when going out, she can go out alone and that she drives and shops in stores, by phone, and by computer for groceries, clothing, and household items. She could shop 30 minutes at a time two to three times weekly unless she uses an electric cart for shopping. She uses her phone to play games, color, and to set medication reminders. She occasionally uses Facebook and prepares her own simple meals daily. She attends church services once monthly. She spends time every day reading the Bible, watching TV, and using a phone to play games and color . . . . In October 2021, she reports she drives and tried to do some housework . . . and in November 2021 she reports of babysitting for triplets . . . . The undersigned is aware that daily activities alone do not necessarily equal an ability to work, these activities do confirm that the claimant is capable of occasional postural findings that include the bending/twisting at the waist to enter/exit vehicles and to get on/off motorized carts when shopping. Her ability in twisting of the neck and back to monitor traffic and obey traffic laws to drive safely, the reaching/lifting/carrying involved with handling groceries and babysitting as well as handling her "support" dog. They also include an ability in sitting and standing/walking for certain periods such as while at church services, driving, babysitting, shopping, preparing food, and at home watching TV and playing games/coloring on her phone. Moreover, as it relates to driving, driving an automobile for any distance requires sufficient concentration and mental skills to follow directions, read traffic signs, avoid routine road hazards, as well as appreciate and evaluate on-coming and same-directional traffic. It also requires significant physical abilities such as sitting in one place for a period of time, turning the steering wheel, and maneuvering one's body in positions as to see in all directions and angles, while simultaneously operating foot controls.

(Tr. 34). Raper's own testimony demonstrates that she retained a greater ability to sit, stand, twist, bend, and react than she alleged as evidenced by her babysitting, handling her dog, driving, etc. Though some of these, like playing on her phone, can be short in nature, many of these everyday activities require more extensive physical

13

and mental abilities than Raper's alleged limitations would permit and therefore are in direct conflict with the record.

Again, it is not this Court's role to "decide facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner" and must affirm if substantial evidence supports the ALJ's decision. *Mitchell*, 771 F.3d at 782. There is substantial evidence to support that not only were Raper's limitations not as significant as she asserted, but that the ALJ considered the totality of Raper's testimony and statements within her medical records to find that though she could not perform her past relevant work, (tr. 39–40), she could perform a range of light work that would allow her to find jobs within the national marketplace. (Tr. 40–41).

Accordingly, the Commissioner's decision is **AFFIRMED**.

**DONE** and **ORDERED** August 26, 2025.

_____
**LILES C. BURKE**
UNITED STATES DISTRICT JUDGE